1 **LEILA W. MORGAN**
California State Bar No. 232874
2 **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 San Diego, CA 92101-5030
(619) 234-8467/Fax: (619) 687-2666
4 E-Mail: Leila_Morgan@fd.org

5

6 Attorneys for Mr. Wong

7

8

9                    UNITED STATES DISTRICT COURT

10                   SOUTHERN DISTRICT OF CALIFORNIA

11                   **(HONORABLE JANIS L. SAMMARTINO)**

12 UNITED STATES OF AMERICA,        )    Case No. 08CR0369-JLS
                                    )
13          Plaintiff,              )    STATEMENT OF FACTS AND
                                    )    MEMORANDUM OF POINTS AND
14 v.                               )    AUTHORITIES IN SUPPORT OF
                                    )    DEFENDANT'S MOTIONS
15 **CHEONG SAU WONG**,             )
                                    )
16          Defendant.              )
   _____ )

17                              **I.**

18                    **STATEMENT OF FACTS**[1]

19 **1.      The Stop and Arrest of Mr. Wong & Mr. Li**

20          On January 29, 2008, Bureau of Land Management Ranger Bradley Kent observed a white

21 cargo van and a light colored SUV traveling in tandem Northbound on highway S-2 at a high rate

22 of speed.  He observed that the SUV, later determined to be driven by Xujun Li, Mr. Wong's co-

23 defendant,  following directly behind the van, later determined to be driven by Mr. Wong.  Ranger

24 Kent, who was on joint patrol with Rangers Cox and Nieblas began following the vehicles.  The

25 Rangers eventually caught up with the vehicles and effectuated a traffic stop.

26 _____

27          [1] Unless otherwise stated, the "facts" referenced in these papers come from government-
produced discovery that the defense continues to investigate. Mr. Wong does not admit the accuracy
28 of this information and reserves the right to challenge it at any time.

1  During the traffic stop, the Rangers requested permission of Mr. Wong in English to search
2  the vehicle. The Rangers allege that he consented to the search of the vehicle. During this search
3  five Chinese national were discovered hidden in a specially built compartment in the vehicle.

4  Mr. Wong and Mr. Li were subsequently arrested  and charged with violations of 8 U.S.C.
5  § 1324.

6  **2.    Grand Jury and Indictment**

7  The indictment in the instant case was returned by the January 2007 grand jury. That grand
8  jury was instructed by the Honorable Larry A. Burns, United States District Court Judge on January
9  11, 2007. *See Reporter's Partial Transcript of the Proceedings*, dated January 11, 2007,
10 a copy of which is attached hereto as Exhibit A. Judge Burns' instructions deviate from the
11 instructions at issue in the major Ninth Circuit cases challenging a form grand jury instruction
12 previously given in this district in several ways.[2]

13 After repeatedly emphasizing to the grand jurors that probable cause determination was their
14 sole responsibility, *see Ex. A* at 3, 3-4, 5,[3] Judge Burns instructed the grand jurors that they were
15 forbidden "from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or
16 not there should be a federal law or should not be a federal law designating certain activity [as]
17 criminal is not up to you." See id. at 8. The instructions go beyond that, however, and tell the grand
18 jurors that, should "you disagree with that judgment made by Congress, then your option is not to
19 say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient' or
20 'I'm going to vote in favor of even though the evidence may be insufficient.'" *See id.* at 8-9. Thus,
21 the instruction flatly bars the grand jury from declining to indict because the grand jurors disagree
22 with a proposed prosecution.

23
24

25     [2]    *See, e.g., United States v. Cortez-Rivera*, 454 F.3d 1038 (9th Cir. 2006); *United States
26 v. Navarro-Vargas*, 408 F.3d 1184 (9th Cir.) (en banc), *cert. denied*, 126 S. Ct. 736 (2005) (*Navarro-Vargas II*); *United States v. Navarro-Vargas*, 367 F.3d 896 (9th Cir. 2004)(*Navarro-Vargas I*);
27 *United States v. Marcucci*, 299 F.3d 1156 (9th Cir. 2002) (per curiam).

28     [3]    *See also id.* at 20 ("You're all about probable cause.").

Immediately before limiting the grand jurors' powers in the way just described, Judge Burns referred to an instance in the grand juror selection process in which he excused three potential jurors. *See id.* at 8.

> I've gone over this with a couple of people. You understood from the questions and answers that a couple of people were
>
> excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

*Id.* That "principle" was Judge Burns' discussion of the grand jurors' inability to give effect to their disagreement with Congress. *See id.* at 8-9. Thus, Judge Burns not only instructed the grand jurors on his view of their discretion; he enforced that view on pain of being excused from service as a grand juror.

In addition to his instructions on the authority to choose not to indict, Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause. *See id.* at 20.[4]

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.*

*Id.* (emphasis added).[5] The district court later returned to the notion of the prosecutors and their duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." *See id.* at 27.

These motions follow.

---

[4]   These instructions were provided in the midst of several comments that praised the United States attorney's office and prosecutors in general.

[5]   The "in most instances" language suggests that there may be some limit on this principle. Again, counsel has ordered the full transcript, and it will likely resolve the question posed in the instant footnote.

1

2

# II.

## MOTION TO COMPEL DISCOVERY

3      Mr. Wong requests the following discovery. Her request is not limited to those items of

4  which the prosecutor is aware. It includes all discovery listed below that is in the custody, control,

5  care, or knowledge of any "closely related investigative [or other] agencies." *See United States v.*

6  *Bryan*, 868 F.2d 1032 (9th Cir. 1989).

7      1.    The Defendant's Statements. The government must disclose to Mr. Wong *all* copies

8  of any written or recorded statements made by Mr. Wong; the substance of any statements made by

9  Mr. Wong that the government intends to offer in evidence at trial; any response by Ms. Vasqeuz

10  to interrogation; the substance of any oral statements that the government intends to introduce at trial

11  and any written summaries of Mr. Wong's oral statements contained in the handwritten notes of the

12  government agent; any response to any <u>Miranda</u> warnings that may have been given to Mr. Wong;

13  and any other statements by Mr. Wong. Fed. R. Crim. P. 16(a)(1)(A) and (B). The Advisory

14  Committee Notes and the 1991 amendments to Rule 16 make clear that the government must reveal

15  *all* Mr. Wong's statements, whether oral or written, regardless of whether the government intends

16  to make any use of those statements.

17      2.    Arrest Reports, Notes and Dispatch Tapes. Mr. Wong also specifically requests that

18  all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding

19  his arrest or any questioning, if such reports have not already been produced *in their entirety*, be

20  turned over to him. This request includes, but is not limited to, any rough notes, records, reports,

21  transcripts or other documents in which statements of Mr. Wong or any other discoverable material

22  is contained. **Mr. Wong includes in this request any redacted portions of the Report of**

23  **Investigation ("ROI") and any subsequent ROIs that the case agent or any other agent has**

24  **written.** This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and *Brady v. Maryland*,

25  373 U.S. 83 (1963). *See also Loux v. United States*, 389 F.2d 911 (9th Cir. 1968). Arrest reports,

26  investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and

27  prosecution reports pertaining to Mr. Wong are available under Fed. R. Crim. P. 16(a)(1)(A) and (B),

28

1   Fed. R. Crim. P. 26.2 and 12(I).   Preservation of rough notes is requested, whether or not the

2   government deems them discoverable.

3        3.   _Brady_ Material.  Mr. Wong requests all documents, statements, agents' reports, and

4   tangible evidence favorable to him on the issue of guilt and/or that affects the credibility of the

5   government's case.   Impeachment and exculpatory evidence both fall within _Brady's_ definition of

6   evidence favorable to the accused.  _United States v. Bagley_, 473 U.S. 667 (1985); _United States v._

7   _Agurs_, 427 U.S. 97 (1976).

8        4.   Any Information That May Result in a Lower Sentence.   As discussed above, any

9   information that may result in a more favorable sentence must also be disclosed pursuant to _Brady_,

10  373 U.S. 83.  The government must disclose any cooperation or attempted cooperation by Mr. Wong,

11  as well as any information that could affect any base offense level or specific offense characteristic

12  under Chapter Two of the United States Sentencing Commission Guidelines Manual ("Guidelines").

13  Also included in this request is any information relevant to a Chapter Three adjustment, a

14  determination of Mr. Wong's criminal history, or any other application of the Guidelines.

15       5.   The Defendant's Prior Record.   Evidence of a prior record is available under

16  Fed. R. Crim. P. 16(a)(1)(D).   Mr. Wong specifically requests a complete copy of any criminal

17  record.

18       6.   Any Proposed 404(b) Evidence.   Evidence of prior similar acts is discoverable under

19  Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609.   In addition, under Fed. R.

20  Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in

21  advance of trial . . . of the general nature . . .." of any evidence the government proposes to introduce

22  under Fed. R. Evid. 404(b) at trial.  Sufficient notice requires the government to "articulate _precisely_

23  the evidential hypothesis by which a fact of consequence may be inferred from the other acts

24  evidence."  _United States v. Mehrmanesh_, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added;

25  internal citations omitted); _see also United States v. Brooke_, 4 F.3d 1480, 1483 (9th Cir. 1993)

26  (reaffirming _Mehrmanesh_ and reversing convictions).

27       This includes any "TECS" records (records of prior border crossings) that the government

28  intends to introduce at trial, whether in its case-in-chief, impeachment, or rebuttal.  Although there

is nothing intrinsically improper about prior border crossings, they are nonetheless subject to 404(b), as they are "other acts" evidence that the government must produce before trial. *United States v. Vega*, 188 F.3d 1150, 1154-1155 (9th Cir. 1999).

Mr. Wong requests that such notice be given *three weeks before trial* to give the defense time to adequately investigate and prepare for trial.

7.    <u>Evidence Seized</u>.  Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E). **Specifically, Mr. Wong requests that this Court order the government to allow the inspection of the cellular phones and two-way radios found in the vehicles at the time of his arrest.**  Mr. Wong requests that when the government makes the items available for inspection the phone are charged, have chargers available, or provide defense counsel with the make and model of the phone so that defense counsel can have charging devices available.

8.    <u>Request for Preservation of Evidence</u>.  The defense specifically requests that all **dispatch tapes** or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and that relate to the arrest or the events leading to the arrest in this case be preserved.  This request includes, but is not limited to **vehicle involved in the case**, Mr. Wong's personal effects, and any evidence seized from Mr. Wong or any third party. This request also includes any material or percipient witnesses who might be deported or otherwise likely to become unavailable (e.g. undocumented aliens and transients).

It is requested that the prosecutor be ordered to *question* all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

9.    <u>Henthorn Material</u>.  Mr. Wong requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material. *See Kyles v. Whitley*, 514 U.S. 437, 438 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).  This request includes, but is not limited to,

any complaints filed (by a member of the public, by another agent, or any other person) against the agent, whether or not the investigating authority has taken any action, as well as any matter for which a disciplinary review was undertaken, whether or not any disciplinary action was ultimately recommended.  Mr. Wong further requests production of any such information at least *one week* prior to the motion hearing and two weeks prior to trial.  If the prosecutor is uncertain whether certain information should be disclosed pursuant to this request, this information should be produced to the Court in advance of the motion hearing and the trial for an *in camera* inspection.

10.    Tangible Objects.  Mr. Wong requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, that are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to Mr. Wong. Fed. R. Crim. P. 16(a)(1)(E).  Specifically, Mr. Wong requests **color copies** of all photographs in the government's possession of the vehicle and the compartment in which the material witnesses were found.

11.    Expert Witnesses.  Mr. Wong requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G).  This summary should include a description of the witness' opinion(s), as well as the bases and the reasons for the opinion(s).  *See United States v. Duvall*, 272 F.3d 825 (7th Cir. 2001) (finding that government's written expert notice did not adequately summarize or describe police detective's testimony in drug prosecution where notice provided only a list of the general subject matters to be covered and failed to identify what opinion the expert would offer on those subjects).  This request includes, but is not limited to, disclosure of the qualifications of any government witness who will testify that he understands and/or speaks Mandarin, Cantonese or any other foreign language that may have been used during the course of an interview with Mr. Wong or any other witness.

Mr. Wong requests the notice of expert testimony be provided at a minimum of *three weeks prior to trial* so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's

1    expert and obtain a hearing in advance of trial to determine the admissibility of qualifications of any

2    expert. *See Kumho v. Carmichael Tire Co.*, 526 U.S. 137, 119 S. Ct. 1167, 1176 (1999) (trial judge

3    is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such

4    determinations may require "special briefing or other proceedings").

5         12.    <u>Impeachment evidence</u>.    Mr. Wong requests any evidence that any prospective

6    government witness has engaged in any criminal act whether or not resulting in a conviction and

7    whether any witness has made a statement favorable to Mr. Wong. *See* Fed. R. Evid. 608, 609 and

8    613. Such evidence is discoverable under *Brady*, 373 U.S. 83. *See United States v. Strifler*,

9    851 F.2d 1197 (9th Cir. 1988) (witness' prior record); *Thomas v. United States*, 343 F.2d 49 (9th Cir.

10   1965) (evidence that detracts from a witness' credibility).

11        13.    <u>Evidence of Criminal Investigation of Any Government Witness</u>.  Mr. Wong requests

12   any evidence that any prospective witness is under investigation by federal, state or local authorities

13   for any criminal conduct. *United States v. Chitty*, 760 F.2d 425 (2d Cir. 1985).

14        14.    <u>Evidence of Bias or Motive to Lie</u>.    Mr. Wong requests any evidence that any

15   prospective government witness is biased or prejudiced against Mr. Wong, or has a motive to falsify

16   or distort his or her testimony. *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *Strifler*, 851 F.2d 1197.

17        15.    <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity</u>.

18   Mr. Wong requests any evidence, including any medical or psychiatric report or evaluation, tending

19   to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth

20   is impaired; and any evidence that a witness has ever used narcotics or other controlled substance,

21   or has ever been an alcoholic. *Strifler*, 851 F.2d 1197; *Chavis v. North Carolina*, 637 F.2d 213, 224

22   (4th Cir. 1980).

23        16.    <u>Witness Addresses</u>.    Mr. Wong requests the name and last known address of each

24   prospective government witness. *See United States v. Napue*, 834 F.2d 1311 (7th Cir. 1987);

25   *United States v. Tucker*, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by

26   counsel is ineffective); *United States v. Cook*, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has

27   equal right to talk to witnesses). Mr. Wong also requests the name and last known address of every

28   witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof)

1  who will *not* be called as a government witness. *United States v. Cadet*, 727 F.2d 1453 (9th Cir.

2  1984).

3       17.  <u>Name of Witnesses Favorable to the Defendant</u>. Mr. Wong requests the name of any

4  witness who made any arguably favorable statement concerning Mr. Wong or who could not identify

5  him or who was unsure of his identity or participation in the crime charged. *Jackson v. Wainwright*,

6  390 F.2d 288 (5th Cir. 1968); *Chavis*, 637 F.2d at 223; *Jones v. Jago*, 575 F.2d 1164,1168 (6th Cir.

7  1978); *Hudson v. Blackburn*, 601 F.2d 785 (5th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980).

8       18.  <u>Statements Relevant to the Defense</u>. Mr. Wong requests disclosure of any statement

9  that may be "relevant to any possible defense or contention" that he might assert. *United States v.*

10  *Bailleaux*, 685 F.2d 1105 (9th Cir. 1982). **This includes grand jury transcripts that are relevant**

11  **to the defense motion to dismiss the indictment.**

12       19.  <u>Jencks Act Material</u>. Mr. Wong requests production in advance of the motion hearing

13  or trial of all material, including dispatch tapes, that the government must produce pursuant to the

14  Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2. A verbal acknowledgment that "rough"

15  notes constitute an accurate account of the witness' interview is sufficient for the report or notes to

16  qualify as a statement under section 3500(e)(1). *Campbell v. United States*, 373 U.S. 487, 490-92

17  (1963); *see also United States v. Boshell*, 952 F.2d 1101 (9th Cir. 1991) (holding that interview notes

18  constitutes Jencks material when an agent reviews notes with the subject of the interview); *see also*

19  *United States v. Riley*, 189 F.3d 802, 806-808 (9th Cir. 1999). Advance production will avoid the

20  possibility of delay of the motion hearing or trial to allow Mr. Wong to investigate the Jencks

21  material. Mr. Wong requests pre-trial disclosure of such statements to avoid unnecessary recesses

22  and delays and to allow defense counsel to prepare for, and use properly any Jencks statements

23  during cross-examination.

24       20.  <u>*Giglio* Information</u>. Pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), Mr.

25  Wong requests all statements and/or promises, expressed or implied, made to any government

26  witnesses, in exchange for their testimony in this case, and all other information that could arguably

27  be used for the impeachment of any government witnesses.

28

21.    <u>Agreements Between the Government and Witnesses</u>.  Mr. Wong requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local).  This request also includes any discussion with a potential witness about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea bargain, even if no bargain was made or the advice not followed.

22.    <u>Informants and Cooperating Witnesses</u>.  Mr. Wong requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Wong.  The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense.  *Roviaro v. United States*, 353 U.S. 52, 61-62 (1957).  The government must disclose any information derived from informants that exculpates or tends to exculpate Mr. Wong.

23.    <u>Bias by Informants or Cooperating Witnesses</u>.  Mr. Wong requests disclosure of any information indicating bias on the part of any informant or cooperating witness.  *Giglio*, 405 U.S. 24.  Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

24.    <u>Personnel Records of Government Officers Involved in the Arrest</u>.  Mr. Wong requests all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Mr. Wong.  *See Pitchess v. Superior Court*, 11 Cal. 3d 531, 539 (1974).  Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

25.    <u>Training of Relevant Law Enforcement Officers</u>.  Mr. Wong requests copies of all written videotaped or otherwise recorded policies or training instructions or manuals issued by all

law enforcement agencies involved in the case (United States Customs Service, Border Patrol, INS, Department of Homeland Security, etc.) to their employees regarding: (a) the handling of vehicles suspected to be transporting contraband across the port of entry; (b) the referral to secondary inspection of persons within those vehicles; (c) the detention of individuals within those vehicles; (d) the search of those vehicles and the occupants of those vehicles, including the proper means of obtaining consent to search and what constitutes consent to search; (e) the informing of suspects of their Constitutional rights; (f) the questioning of suspects and witnesses. Mr. Wong also requests all written or otherwise attainable information regarding the training of Customs agents at ports of entry in California to detect or discover contraband in vehicles entering the United States, including any training offered to Border Patrol, INS, or officers of Homeland Security Department, by the DEA or other law enforcement agencies or individuals.

26. <u>Performance Goals and Policy Awards</u>. Mr. Wong requests disclosure of information regarding standards used for measuring, compensating or reprimanding the conduct of all law enforcement officers involved in the case (Customs, Border Patrol, INS, etc.) to the extent such information relates to the detection of illegal aliens. This request specifically includes information concerning performance goals, policy awards, and the standards used by Customs for commending, demoting, or promoting agents for their performance at the port of entry and their success or failure to detect illegal narcotics in general.

27. <u>TECS Reports</u>. Mr. Wong requests all TECS reports, including reports pertaining to all vehicle border crossings pertaining to the vehicle used in this case and any vehicles pertaining to Mr. Wong. **Any prior border crossings are considered "other acts" evidence which the government must produce before trial**. *Vega*, 188 F.3d at 1154.

28. <u>Reports of Scientific Tests or Examinations</u>. Pursuant to Fed. R. Crim. P. 16(a)(1)(F), Mr. Wong requests the reports of all tests and examinations conducted upon the evidence in this case, including, but not limited to, any fingerprint testing done upon any evidence seized in this case, that is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and that

1    are material to the preparation of the defense or are intended for use by the government as evidence

2    in chief at the trial.

3        29.   _Brady_ Information.  The defendant requests all documents, statements, agents' reports,

4    and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the

5    credibility of the government's case.  Under *Brady v. Maryland*, 373 U.S. 83 (1963), impeachment

6    as well as exculpatory evidence falls within the definition of evidence favorable to the accused.

7    *United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976).

8        30.   Any Proposed 404(b) Evidence.  The government must produce evidence of prior

9    similar acts under Fed. R. Crim. P. 16(a)(1) and Fed. R. Evid. 404(b) and any prior convictions

10   which would be used to impeach as noted in Fed. R. Crim. P. 609.  In addition, under Fed. R. Evid.

11   404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance

12   of trial . . . of the general nature" of any evidence the government proposes to introduce under

13   Fed. R. Evid. 404(b) at trial.  The defendant requests notice two weeks before trial to give the

14   defense time to investigate and prepare for trial.

15       31.   Specific Request.  Mr. Wong specifically requests the opportunity to view the "A-File"

16   of the material witnesses in this case.

17       32.   Residual Request.  The defendant intends by this discovery motion to invoke her rights

18   to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the

19   Constitution and laws of the United States.

20                                          **III.**

21   **THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE**
     **INSTRUCTIONS PROVIDED TO THE JANUARY 2007 GRAND JURY RUN AFOUL**
22   **OF BOTH *NAVARRO-VARGAS* AND *WILLIAMS*.**

23   **A.    *Navarro-Vargas* Establishes Limits on the Ability of Judges to Constrain the Powers of**
     **the Grand Jury.**
24

25       The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions

26   given to grand jurors in the Southern District of California.  *See Navarro-Vargas II*, 408 F.3d 1184.

27   While the Ninth Circuit has thus far (narrowly) rejected such challenges, it has, in the course of

28

1  adopting a highly formalistic approach[6] to the problems posed by the instructions, endorsed many

2  of the substantive arguments raised by the defendants in those cases. The district court's instructions

3  cannot be reconciled with the role of the grand jury as set forth in *Navarro-Vargas II*.

4       For instance, with respect to the grand jury's relationship with the prosecution, the *Navarro-*

5  *Vargas II* majority acknowledges that the two institutions perform similar functions: "'the public

6  prosecutor, in deciding whether a particular prosecution shall be instituted or followed up, performs

7  much the same function as a grand jury.'" *Navarro-Vargas II*, 408 F.3d at 1200 (quoting *Butz v.*

8  *Economou*, 438 U.S. 478, 510 (1978)). *Accord Navarro-Vargas I*, 367 F.3d at 900 (Kozinski, J.,

9  dissenting) (The grand jury's discretion in this regard "is most accurately described as prosecutorial."

10 ). *See also Navarro-Vargas II*, 408 F.3d at 1213 (Hawkins, J., dissenting). It recognizes that the

11 prosecutor is not obligated to proceed on any indictment or presentment returned by a grand jury,

12 id., but also that "the grand jury has no obligation to prepare a presentment or to return an indictment

13 drafted by the prosecutor." *Id. See* Niki Kuckes, *The Democratic Prosecutor: Explaining the*

14 *Constitutional Function of the Federal Grand Jury*, 94 Geo. L.J. 1265, 1302 (2006) (the grand jury's

15 discretion not to indict was "'arguably . . . the most important attribute of grand jury review from

16 the perspective of those who insisted that a grand jury clause be included in the Bill of Rights'")

17 (quoting Wayne LaFave et al., *Criminal Procedure* § 15.2(g) (2d ed. 1999)).

18      Indeed, the *Navarro-Vargas II* majority agrees that the grand jury possesses all the attributes

19 set forth in *Vasquez v. Hillery*, 474 U.S. 254 (1986). *See id.*

20      The grand jury thus determines not only whether probable cause exists, but also
         whether to "charge a greater offense or a lesser offense; numerous counts or a single
21       count; and perhaps most significant of all, a capital offense or a non-capital offense --
         all on the basis of the same facts. And, significantly, the grand jury may refuse to
22       return an indictment even "'where a conviction can be obtained.'"

23

24 *Id.* (quoting *Vasquez*, 474 U.S. at 263). The Supreme Court has itself reaffirmed *Vasquez's*

25 description of the grand jury's attributes in *Campbell v. Louisiana*, 523 U.S. 392 (1998), noting that

26      _____

27      [6]   *See Navarro-Vargas II*, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (criticizing the
        majority because "[t]he instruction's use of the word 'should' is most likely to be understood as
        imposing an inflexible 'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's
28      constitutional independence.").

1   the grand jury "controls not only the initial decision to indict, but also significant questions such as

2   how many counts to charge and whether to charge a greater or lesser offense, including the important

3   decision whether to charge a capital crime." *Id.* at 399 (citing *Vasquez*, 474 U.S. at 263).

4        Judge Hawkins notes that the *Navarro-Vargas II* majority accepts the major premise of

5   *Vasquez*: "the majority agrees that a grand jury has the power to refuse to indict someone even when

6   the prosecutor has established probable cause that this individual has committed a crime." *See* id.

7   at 1214 (Hawkins, J. dissenting). *Accord Navarro-Vargas I*, 367 F.3d at 899 (Kozinski, J.,

8   dissenting); *Marcucci*, 299 F.3d at 1166-73 (Hawkins, J., dissenting). In short, the grand jurors'

9   prerogative not to indict enjoys strong support in the Ninth Circuit. But not in Judge Burns'

10   instructions.

11   **B.**   **The Instructions Forbid the Exercise of Grand Jury Discretion Established in Both**

12          ***Vasquez*** **and** ***Navarro-Vargas II.***

13        The *Navarro-Vargas II* majority found that the instruction in that case "leave[s] room for the

14   grand jury to dismiss even if it finds probable cause," 408 F.3d at 1205, adopting the analysis in its

15   previous decision in *Marcucci*. *Marcucci* reasoned that the instructions do not mandate that grand

16   jurors indict upon every finding of probable cause because the term "should" may mean "what is

17   probable or expected." 299 F.3d at 1164 (citation omitted). That reading of the term "should" makes

18   no sense in context, as Judge Hawkins ably pointed out. *See Navarro-Vargas II*, 408 F.3d at 1210-

19   11 (Hawkins, J., dissenting) ("The instruction's use of the word 'should' is most likely to be

20   understood as imposing an inflexible 'duty or obligation' on grand jurors, and thus to circumscribe

21   the grand jury's constitutional independence."). *See also id*. ("The 'word' should is used to express

22   a duty [or] obligation.") (quoting *The Oxford American Diction and Language Guide* 1579 (1999)

23   (brackets in original)).

24        The debate about what the word "should" means is irrelevant here; the instructions here make

25   no such fine distinction. The grand jury instructions make it painfully clear that grand jurors simply

26   may not choose not to indict in the event of what appears to them to be an unfair application of the

27   law: should "you disagree with that judgment made by Congress, then your option is not to say 'well,

28   I'm going to vote against indicting even though I think that the evidence is sufficient'...." *See* Ex.

1  A at 8-9.  Thus, the instruction flatly bars the grand jury from declining to indict because they

2  disagree with a proposed prosecution.  No grand juror would read this language as instructing, or

3  even allowing, him or her to assess "the need to indict."  *Vasquez*, 474 U.S. at 264.

4      Nor does the *Navarro-Vargas II* majority's faith in the structure of the grand jury a cure for

5  the instructions excesses.  The *Navarro-Vargas II* majority attributes "[t]he grand jury's discretion --

6  its independence -- [to] the absolute secrecy of its deliberations and vote and the unreviewability of

7  its decisions."  408 F.3d at 1200.  As a result, the majority discounts the effect that a judge's

8  instructions may have on a grand jury because "it is the *structure* of the grand jury process and its

9  *function* that make it independent."  *Id.* at 1202 (emphases in the original).

10      Judge Hawkins sharply criticized this approach.  The majority, he explains, "believes that the

11  'structure' and 'function' of the grand jury -- particularly the secrecy of the proceedings and

12  unreviewability of many of its decisions -- sufficiently protects that power."  *See id.* at 1214

13  (Hawkins, J., dissenting).  The flaw in the majority's analysis is that "[i]nstructing a grand jury that

14  it lacks power to do anything beyond making a probable cause determination ... unconstitutionally

15  undermines the very structural protections that the majority believes save[] the instruction."  *Id.*

16  After all, it is an "'almost invariable assumption of the law that jurors follow their instructions.'"  *Id.*

17  (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)).  If that "invariable assumption" were to

18  hold true, then the grand jurors could not possibly fulfill the role described in *Vasquez*.  Indeed,

19  "there is something supremely cynical about saying that it is fine to give jurors erroneous instructions

20  because nothing will happen if they disobey them."  *Id.*

21      In setting forth Judge Hawkins' views, Mr. Wong understands that this Court may not adopt

22  them solely because the reasoning that supports them is so much more persuasive than the majority's

23  sophistry.  Rather, she sets them forth to urge the Court *not to extend* what is already untenable

24  reasoning.

25      Here, again, the question is not an obscure interpretation of the word "should", but an

26  absolute ban on the right to refuse to indict that directly conflicts with the recognition of that right

27  in *Vasquez*, *Campbell*, and both *Navarro-Vargas II* opinions.  *Navarro-Vargas II* is distinguishable

28  on that basis, but not only that.

Judge Burns did not limit himself to denying the grand jurors the power that <u>Vasquez</u> plainly states they enjoy. He also apparently excused prospective grand jurors who might have exercised that Fifth Amendment prerogative, excusing "three [jurors] in this case, because they could not adhere to [that] principle...." *See* Ex. A at 8. The structure of the grand jury and the secrecy of its deliberations cannot embolden grand jurors who are no longer there, likely because they expressed their willingness to act as the conscience of the community. *See Navarro-Vargas II*, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (a grand jury exercising its powers under *Vasquez* "serves ... to protect the accused from the other branches of government by acting as the 'conscience of the community.'") (quoting *Gaither v. United States*, 413 F.2d 1061, 1066 & n.6 (D.C. Cir. 1969)). The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of grand jury procedure," *United States v. Williams*, 504 U.S. 36, 50 (1992), and, here, Judge Burns has both fashioned his own rules and enforced them. The instructions here are therefore structural error. *See Navarro-Vargas II*, 408 at 1216-17 (Hawkins, J., dissenting). The indictment must be dismissed.

**C.      The Instructions Conflict With *Williams'* Holding that there Is No Duty to Present Exculpatory Evidence to the Grand Jury.**

In *Williams*, the defendant, although conceding that it was not required by the Fifth Amendment, argued that the federal courts should exercise their supervisory power to order prosecutors to disclose exculpatory evidence to grand jurors, or, perhaps, to find such disclosure required by Fifth Amendment common law. *See* 504 U.S. at 45, 51. *Williams* held that "as a general matter at least, no such 'supervisory' judicial authority exists." *See id.* at 47. Indeed, although the supervisory power may provide the authority "to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions,'" *id.* at 46 (citation omitted), it does not serve as "a means of *prescribing* such standards of prosecutorial conduct in the first instance." *Id.* at 47 (emphasis added). The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of grand jury procedure." *Id.* at 50. As a consequence, *Williams* rejected the defendant's claim, both as an exercise of supervisory power and as Fifth Amendment common law. *See id.* at 51-55.

Despite the holding in *Williams*, the instructions here assure the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause. *See* Ex. A at 20. Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence*.
*Id.* (emphasis added). Moreover, the district court later returned to the notion of the prosecutors and their duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear

1   in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters

2   presented to you." *See id.* at 27.

3          This particular instruction has a devastating effect on the grand jury's protective powers,

4   particularly if it is not true.  It begins by emphasizing the message that *Navarro-Vargas II* somehow

5   concluded was not conveyed by the previous instruction: "You're all about probable cause." *See* Ex.

6   A at 20.  Thus, once again, the grand jury is reminded that they are limited to probable cause

7   determinations (a reminder that was probably unnecessary in light of the fact that Judge Burns had

8   already told the grand jurors that they likely would be excused if they rejected this limitation).  The

9   instruction goes on to tell the grand jurors that they should consider evidence that undercuts probable

10  cause, but also advises the grand jurors that the prosecutor will present it.  The end result, then, is

11  that grand jurors should consider evidence that goes against probable cause, but, if none is presented

12  by the government, they can  presume that there is none.  After all, "in most instances, the U.S.

13  Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do

14  if they're aware of that evidence." *See id.*  Thus, if the exculpatory evidence existed, it necessarily

15  would have been presented by the "duty-bound" prosecutor, because the grand jurors "can expect that

16  the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll

17  act in good faith in all matters presented to you." *See id.* at 27.

18         These instructions create a presumption that, in cases where the prosecutor does not present

19  exculpatory evidence, no exculpatory evidence exists.  A grand juror's reasoning, in a case in which

20  no exculpatory evidence was presented, would proceed along these lines:

21         (1) I have to consider evidence that undercuts probable cause.

22         (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such

23         evidence to me, if it existed.

24         (3)  Because no such evidence was presented to me, I may conclude that there is none.

25  Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the

26  evidence presented represents the universe of all available exculpatory evidence; if there was more,

27  the duty-bound prosecutor would have presented it.

28

1    The instructions therefore discourage investigation -- if exculpatory evidence were out there,

2   the prosecutor would present it, so investigation is a waste of time -- and provide additional support

3   to every probable cause determination: i.e., this case may be weak, but I know that there is nothing

4   on the other side of the equation because it was not presented.  A grand jury so badly misguided is

5   no grand jury at all under the Fifth Amendment.

6                                            **IV.**

7               **THIS COURT SHOULD GRANT LEAVE TO FILE FURTHER MOTIONS**

8    Mr. Wong and defense counsel have received 74 pages of discovery in this case.  Defense

9   counsel has reason to believe this discovery is incomplete. Defense counsel requests leave to file

10   further motions as new information comes to light.

11                                            **V.**

12                                     **CONCLUSION**

13   For the reasons stated, Mr. Wong requests that this Court grant his motions.

14                                       Respectfully submitted,

15

16   DATED:       March 7, 2008              */s/ Leila W. Morgan*
                                             **LEILA W. MORGAN**
17                                           Federal Defenders of San Diego, Inc.
                                             Attorneys for Mr. Wong
18                                           Leila_Morgan@fd.org

19

20

21

22

23

24

25

26

27

28