1    KAREN P. HEWITT
     United States Attorney
2    A. DALE BLANKENSHIP
     Assistant United States Attorney
3    California State Bar No. 235960
     Federal Office Building
4    880 Front Street, Room 6293
     San Diego, California 92101-8893
5    Telephone: (619) 557-6199/(619) 235-2757 (Fax)
     Email: Dale.Blankenship@usdoj.gov
6
     Attorneys for Plaintiff
7    United States of America

8                        UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          )  Criminal Case No. 08CR0369-JLS
                                        )
11              Plaintiff,              )  Date:       March 21, 2008
                                        )  Time:       1:30 p.m.
12         v.                           )
                                        )  GOVERNMENT'S RESPONSE AND
13   CHEONG SAU WONG(1),                )  OPPOSITION TO DEFENDANTS'
     XU JUN LEE(2),                     )  MOTIONS TO:
14                                      )
                                        )  (1)  COMPEL DISCOVERY;
15              Defendants.             )  (2)  DISMISS DUE TO GRAND JURY
                                        )       INSTRUCTION; AND
16                                      )  (3)  FILE FURTHER MOTIONS.
                                        )
17                                      )
                                        )  TOGETHER WITH STATEMENT OF
18                                      )  FACTS, MEMORANDUM OF POINTS
                                        )  AND AUTHORITIES.
19   _____)

20
            COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel
21
     KAREN P. HEWITT, United States Attorney, and A. DALE BLANKENSHIP, Assistant U.S.
22
     Attorney, and hereby files its Response and Opposition to the motions filed on behalf of defendants
23
     Cheong Sau Wong(1) and Xu Jun Lee(2) which is based upon the files and records of this case.
24
     //
25
     //
26
     //
27

28

# I

## STATEMENT OF THE CASE

On February 13, 2008, a federal grand jury for the Southern District of California returned a five-count Indictment, charging Defendants, Cheong Sau Wong(1) and Xu Jun Lee(2) with transportation of illegal aliens and aiding and abetting in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II). Both Defendants were arraigned on the Indictment on February 14, 2008, and entered a not guilty plea.

On February 25, 2008, Defendant(2), Xu Jun Lee, filed motions to compel discovery; and leave to file further motions. On March 7, 2008, Defendant(1), Cheong Sau Wong, filed motions to compel discovery, dismiss the indictment due to misinstruction of the grand jury and leave to file further motions. On March 10, 2008, Defendant(2) filed a motion to join the motion to dismiss the indictment due to misinstruction of the grand jury filed by Defendant(1).

# II

## STATEMENT OF FACTS

### A.    IMMIGRATION HISTORY

Defendant(1) is a United States citizen.

Defendant(2) is a citizen of China and a legal permanent resident of the United States.

### B.    CRIMINAL AND ARREST HISTORY

Defendant(2) has several arrests involving prostitution.

### C.    ALIEN-SMUGGLING

On January 29, 2008, at approximately 4:30 p.m., Bureau of Land Management ("BLM") Law Enforcement Rangers Cox, Nieblas and Kent, were on patrol on BLM lands, on County Road S-2, near the San Diego and Imperial County line. The rangers observed two vehicles traveling in tandem driving north on S-2. The vehicles were traveling very closely together at a high rate of speed for the road conditions. County Road S-2 has many elevation changes, curves, and blind spots. The front vehicle was a white 2004 GMC cargo van with California license plate #7H22487, the rear vehicle was a 20087 Mercury Mountaineer SUV with California license plate #6CEK721.

1.     <u>SUV Traffic Stop</u>

1

2    Ranger Kent left his stationary position in his marked BLM law enforcement vehicle, and

3    Rangers Cox and Nieblas left there stationary position in their BLM law enforcement vehicle, and

4    began following the SUV and van.  Due to the vehicles' high rate of speed, the rangers traveled

5    several miles before catching up with the vehicles.  When Ranger Kent was able to catch up to the

6    vehicles, he observed the SUV pass the van on a blind curve.  Ranger Kent observed the SUV

7    cross the solid double yellow lines, overtake the van and continue driving.  When conditions were

8    safe, Ranger Kent passed the van, and as he approached the SUV, it pulled to the side of the road,

9    onto the shoulder, before Ranger Kent activated his emergency lights and sirens.

10    Ranger Kent pulled in behind the SUV, activated his emergency lights, and requested a

11    records check on the license plate.  The dispatcher informed Ranger Kent that the vehicle was a

12    rental vehicle.  Ranger Kent and approached the vehicle on the driver's side and asked the driver,

13    and sole occupant of the vehicle, Xu Jun Lee (Defendant(2)), for his driver's license and insurance

14    information.  Defendant(2) provided his California driver's license and a rental contract from

15    Budget Rental Cars in Yuma, Arizona.  Ranger Kent asked Defendant where he was coming from

16    and Defendant(2) replied that he was coming from Yuma, Arizona.  Ranger Kent asked

17    Defendant(2) where he was going, and he replied that he was going to Julian, to visit his uncle.

18    Ranger Kent asked if he knows where his uncle lives in Julian, and Defendant(2) responded that

19    he does not know.  When asked if he lives in Yuma, Defendant(2) responded that he lives in San

20    Jose.

21    Ranger Kent returned to his service vehicle to inform dispatch of his status.  When Ranger

22    Kent returned to the vehicle, he asked Defendant(2) if he knew the person driving the van.

23    Defendant(2) responded that it was his uncle.  Ranger Kent again asked Defendant(2) why he was

24    going to Julian, and Defendant(2) responded that he was helping his Uncle move from Yuma to

25    Julian.  Ranger Kent asked Defendant(2) why he passed his uncle in such a dangerous way, and

26    Defendant(2) responded that his uncle was driving to slowly.  Ranger Kent observed that

27    Defendant(2) had trembling hands, and appeared to be nervous while answering questions.  Ranger

28    Kent also observed a camouflage two-way radio on the floor of the passenger floorboard and a cell

1    phone under the passenger seat. Ranger Kent then escorted Defendant(2) from the location where

2    Defendant(2) pulled over, to the location of the white van which had been pulled over by Rangers

3    Nieblas and Cox.

4         Upon arriving at the location of the white van, Ranger Kent observed that Rangers Nieblas

5    and Cox were removing persons from the white van. Ranger Kent also observed that individuals

6    were inside a wooden box in the back of the van. Ranger Kent conducted a pat down of

7    Defendant(2) for officer safety and handcuffed Defendant(2). During the patdown, Ranger Kent

8    discovered a large bundle of one hundred dollar bills in front pants pocket of Defendant(2).

9    Ranger Kent discovered several bundles of U.S. currency in a bag on the front passenger seat of

10   the SUV. The total amount of currency found on the person of Defendant(2) was $1,200.00. The

11   total amount of currency in the bag was $11,300.00. Ranger Kent asked Defendant(2) who owned

12   the money and Defendant(2) replied that some was his and some was not. Ranger Kent issued a

13   state citation to Defendant(2) for false statement, unsafe passing and crossing the double yellow

14   lines.

15                    2.    <u>Cargo Van Traffic Stop</u>

16        Law Enforcement Rangers Nieblas and Cox left their stationary position in a marked BLM

17   law enforcement vehicle and began following the SUV and van. Upon reaching the position of the

18   cargo van, Ranger Nieblas observed the SUV pass the van. After the SUV passed the cargo van,

19   Ranger Nieblas observed that the cargo van was swerving toward the fog line. Ranger Nieblas

20   initiated a traffic stop by activating his emergency lights and siren. Ranger Nieblas approached

21   the vehicle on the passenger side, and Ranger Cox approached on the driver's side. Ranger

22   Nieblas ordered Defendant(1), CHEONG SAU WONG, to turn off the vehicle. Ranger Nieblas

23   observed that the entire passenger area of the van was filled with furniture and a computer. Ranger

24   Nieblas also observed that Defendant(1) appeared to be nervous, his whole body was shaking and

25   his arms were flinging all over the steering wheel.

26        Ranger Nieblas asked Defendant(1) if there were any other occupants in the vehicle, and

27   Defendant(1) responded that there were not. Ranger Nieblas asked what was in the back of the van

28   and Defendant(1) responded that he had a computer in the back. Ranger Nieblas asked

1    Defendant(1) for permission to search the vehicle and Defendant(1) consented.  Ranger Nieblas

2    also asked Defendant(1) if he was traveling with the SUV and he replied that he was not.  Ranger

3    Nieblas communicated with Ranger Kent and was informed of the statement by Defendant(2) that

4    he was traveling with Defendant(1).

5        While searching the back of the cargo van, Ranger Nieblas heard movement in the back of

6    the vehicle.  While Ranger Cox continued to search the vehicle, Ranger Nieblas again asked

7    Defendant(1) if there were people inside the van and he replied no.  Ranger Nieblas asked

8    Defendant(1) where he lives Defendant(1) replied that he lives in Yuma.  Defendant(1) further

9    stated that he was coming from Yuma and that he was going to Julian.  Defendant(1) denied

10   knowing the driver of the SUV.

11       During the vehicle search, the Rangers found a wooden box.  Ranger shined a flashlight

12   through the crack in the box and determined that people were hidden inside the box, but they could

13   not exit the box because a sofa was resting on top of the box, and the rear of the box was blocked

14   by two washers secured tightly by the rear doors.  The sofa was removed and Ranger Cox broke

15   open the wooden box.  Ranger Nieblas observed 4 males and one female cramped inside the box.

16   All were barefoot, soaked in sweat, and flushed.  The female appeared to by unconscious, and it

17   took several loud orders to get her to respond.  There was no food or water inside the box.

18       Ranger Nieblas found a receipt for the purchase of the vehicle for $10,000.00 cash inside

19   the passenger door panel.  Ranger Cox found a camouflage two-way radio matching the radio in

20   the SUV, and two cell phones in the drivers area of the cargo van.  Rangers also found Chinese and

21   Korean currency in the vehicle.   Ranger Nieblas cited Defendant(1) for providing false

22   information, people riding in the vehicle where not designated,  and no proof of insurance.

23       Ranger Nieblas contacted United States Border Patrol and Border Patrol Agent Eduardo

24   Vasquez and Samuel Morales responded to the scene.  Border Patrol Agents then transported the

25   Defendants and the material witnesses to the El Centro Border Patrol Station for processing.

26   //

27   //

28

### D.    DEFENDANT'S STATEMENT

Immigration and Customs Enforcement ("ICE") Agents Paul Lewenthal and Chris Miller responded to the El Centro Border Patrol Station to assist.  The ICE agents advised each Defendant of his <u>Miranda</u> rights and each Defendant invoked.

### E.    MATERIAL WITNESS'S STATEMENT

The ICE agents conducted interviews with each of the material witnesses utilizing the services of Customs and Border Protection language line translator.

Material Witness Ligin Lin stated that he is a citizen of China and that he had no immigration documents that would allow him to enter the United States.  Lin stated that he traveled from China to the United States by way of bus then boat.  Lin stated that he believes that he has been in the United States for approximately 2 months.  Lin stated that a friend of his made arrangements for his passage and that he did not know the amount that was to be paid.  Lin stated that he did not know where he was traveling in the United States.  Lin also stated that he was inside the compartment for approximately 2 hours and that he was not aware of who put him there.

Material Witness Liangeng Jiang stated that he is a citizen of China and that he too did not have immigration documents.  Jiang stated that he left China approximately 2 months ago and traveled to an unknown place.  Jiang stated that his uncle made his travel arrangements and that he did not know how much was to be paid.  Jiang also stated that he was inside the compartment for 2 to 3 hours and that he could barely breathe, that there was nothing to drink,  that he could not move, and that he felt hot and sweaty.

Material Witness Yuhai Wang stated that he also is a citizen of China with no documents to enter the United States.  Wang stated that he left China approximately one year ago and traveled to unknown countries.  Wang stated that a friend of his made arrangements for his passage and that he did not know the amount that was to be paid.  Wang also stated that he was inside the compartment for approximately 1 hour, that he could not breathe, that he could not move, and that he could not get out of the compartment.

Material Witness Xuzai Dong, stated that he also is a citizen of China with no documents to enter the United States.  Dong stated that he left China approximately 6 months ago and traveled

1    to unknown countries by plane.  Dong stated that he did not know where he was going in the

2    United States.  Dong also stated that he could not move inside the compartment, that he felt hot,

3    that he could not breathe.

4        Material Witness Ming Zhou Zhu stated that she also is a citizen of China with no

5    documents to enter the United States.  Zhu stated that he left China in October of 2007 and traveled

6    to unknown countries by plane, train and bus.  Zhu stated that a friend of hers made arrangements

7    for her passage and that she did not know the amount that was to be charged. Zhu also stated that

8    she could not breathe, that she could not move, and that she could not get out of the compartment.

9                                                    **III**

10                  **UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES**

11    **A.        THE GOVERNMENT WILL COMPLY WITH DISCOVERY OBLIGATIONS**

12        The Government intends to fully comply with its discovery obligations under <u>Brady v.</u>

13    <u>Maryland</u>, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal

14    Rules of Criminal Procedure.  The Government anticipates that most discovery issues can be

15    resolved amicably and informally, and has addressed Defendant's specific requests below.

16        **(1)        The Defendants' Statements**

17        The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to

18    provide to Defendant the substance of Defendant's oral statements and Defendant's written

19    statements.  The Government has produced all of Defendants' written statements that are known

20    to the undersigned Assistant U.S. Attorney at this date and has also produced all available

21    videotapes and/or audiotapes.  If the Government discovers additional oral or written statements

22    that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be

23    provided to Defendant.

24        The Government has no objection to the preservation of the handwritten notes taken by any

25    of the Government's agents and officers.  <u>See</u> <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th

26    Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective

27    government witnesses).  However, the Government objects to providing Defendant with a copy

28    of any rough notes at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes

1    where the content of those notes have been accurately reflected in a type-written report.  See

2    United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573,

3    583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where

4    there are "minor discrepancies" between the notes and a report).  The Government is not required

5    to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements"

6    (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim

7    narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  United

8    States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case do not

9    constitute "statements" in accordance with the Jencks Act.  See United States v. Ramirez, 954 F.2d

10   1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes

11   were scattered and all the information contained in the notes was available in other forms).  The

12   notes are not Brady material because the notes do not present any material exculpatory

13   information, or any evidence favorable to Defendant that is material to guilt or punishment.

14   Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither

15   favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos,

16   27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence

17   was insufficient).  If, during a future evidentiary hearing, certain rough notes become discoverable

18   under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

19                    **(2)    Arrest Reports, Notes and Dispatch Tapes**

20          The United States has provided the Defendant with arrest reports.  As noted previously,

21   agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16

22   discovery.

23                    **(3)    Brady Material**

24          Again, the United States is well aware of and will continue to perform its duty under Brady

25   v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose

26   exculpatory evidence within its possession that is material to the issue of guilt or punishment.

27   Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be,

28   favorable to the accused, or which pertains to the credibility of the United States' case.  As stated

1    in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution

2    does not have a constitutional duty to disclose every bit of information that might affect the jury's

3    decision; it need only disclose information favorable to the defense that meets the appropriate

4    standard of materiality." <u>Id.</u> at 774-775 (citation omitted).

5            The United States will turn over evidence within its possession which could be used to

6    properly impeach a witness who has been called to testify.

7            Although the United States will provide conviction records, if any, which could be used

8    to impeach a witness, the United States is under no obligation to turn over the criminal records of

9    all witnesses.  <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such

10   information, disclosure need only extend to witnesses the United States intends to call in its case-

11   in-chief.  <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>,

12   607 F.2d 1305, 1309 (9th Cir. 1979).

13           Finally, the United States will continue to comply with its obligations pursuant to

14   <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

15           **(4)    Sentencing Information**

16           Defendant claims that the United States must disclose any information affecting

17   Defendant's sentencing guidelines because such information is discoverable under <u>Brady v.</u>

18   <u>Maryland</u>, 373 U.S. 83 (1963).  The United States respectfully contends that it has no such

19   disclosure obligation under <u>Brady</u>.

20           The United States is not obligated under <u>Brady</u> to furnish a defendant with information

21   which he already knows.  <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  <u>Brady</u>

22   is a rule of disclosure, and therefore, there can be no violation of <u>Brady</u> if the evidence is already

23   known to the defendant.  In such case, the United States has not suppressed the evidence and

24   consequently has no <u>Brady</u> obligation.  <u>See</u> <u>United States v. Gaggi</u>, 811 F.2d 47, 59 (2d Cir. 1987).

25           But even assuming Defendant does not already possess the information about factors which

26   might affect his guideline range, the United States would not be required to provide information

27   bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of

28   guilty and prior to his sentencing date.  <u>See</u> <u>United States v. Juvenile Male</u>, 864 F.2d 641, 647 (9th

1  Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time

2  when the disclosure remains in value.").  Accordingly, Defendant's demand for this information

3  is premature.

4    **(5)    Defendant's Prior Record.**

5    The United States has already provided Defendant with a copy of her criminal record in

6  accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

7    **(6)    Proposed 404(b) Evidence and 609 Evidence**

8    Should the United States seek to introduce any similar act evidence pursuant to Federal

9  Rules of Evidence 404(b) or 609, the United States will provide Defendant with notice of its

10  proposed use of such evidence and information about such bad act at the time the United States'

11  trial memorandum is filed.

12    **(7)    Evidence Seized**

13    The United States has complied and will continue to comply with Rule 16(a)(1)(c) in

14  allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

15  evidence which is within the possession, custody or control of the United States, and which is

16  material to the preparation of Defendant's defense or are intended for use by the United States as

17  evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

18    The United States, however, need not produce rebuttal evidence in advance of trial.  United

19  States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

20    **(8)    Tangible Objects**

21    The Government has complied and will continue to comply with Rule 16(a)(1)(E) in

22  allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

23  tangible objects seized that is within its possession, custody, or control, and that is either material

24  to the preparation of Defendant's defense, or is intended for use by the Government as evidence

25  during its case-in-chief at trial, or was obtained from or belongs to Defendant.   The Government

26  need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767

27  F.2d 574, 584 (9th Cir. 1984).

28  //

1    **(9)    Evidence of Bias or Motive to Lie**

2    The United States is unaware of any evidence indicating that a prospective witness is biased

3    or prejudiced against Defendant.  The United States is also unaware of any evidence that

4    prospective witnesses have a motive to falsify or distort testimony.

5    **(10)    Impeachment Evidence**

6    As stated previously, the United States will turn over evidence within its possession which

7    could be used to properly impeach a witness who has been called to testify.  The United States

8    opposes Defendant's request to turn over the immigration files for the material witnesses.  The

9    United States will review the files to determine if any evidence to which Defendant is entitled is

10    contained in the immigration files.

11    **(11)    Criminal Investigation of Government Witness**

12    Defendants are not entitled to any evidence that a prospective witness is under criminal

13    investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government]

14    witnesses are not discoverable." <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976);

15    <u>United States v. Riley</u>, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records

16    of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); <u>cf. United</u>

17    <u>States v. Rinn</u>, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that

18    the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)© to supply a

19    defendant with the criminal records of the Government's intended witnesses.") (citing <u>Taylor</u>, 542

20    F.2d at 1026).

21    The Government will, however, provide the conviction record, if any, which could be used

22    to impeach witnesses the Government intends to call in its case-in-chief.  When disclosing such

23    information, disclosure need only extend to witnesses the United States intends to call in its case-

24    in-chief.  <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>,

25    607 F.2d 1305, 1309 (9th Cir. 1979).

26    **(12)    Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

27    The United States is unaware of any evidence indicating that a prospective witness has a

28    problem with perception, recollection, communication, or truth-telling.

1     **(13)**    **Witness Addresses**

2         The Government has already provided Defendant with the reports containing the names of

3 the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital

4 case, however, has no right to discover the identity of prospective Government witnesses prior to

5 trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d

6 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United

7 States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the

8 Government will provide Defendant with a list of all witnesses whom it intends to call in its case-

9 in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960

10 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). The

11 Government is not aware of any "tips" provided by anonymous or identified persons that resulted

12 in Defendant's arrest.

13         The Government objects to Defendant's request that the Government provide a list of every

14 witness to the crimes charged who will not be called as a Government witness. "There is no

15 statutory basis for granting such broad requests," and a request for the names and addresses of

16 witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)©." United

17 States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F.

18 Supp. 444, 502 (D. Del. 1980)). The Government is not required to produce all possible

19 information and evidence regarding any speculative defense claimed by Defendant. Wood v.

20 Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not

21 likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure

22 under Brady).

23     **(14)**    **Witnesses Favorable to the Defendant**

24         As stated earlier, the Government will continue to comply with its obligations under Brady

25 and its progeny. Other than the material witness in this case, the Government is not aware of any

26 witnesses who have made an "arguably favorable statement concerning the defendant or who could

27 not identify him or who w[ere] unsure of his identity, or participation in the crime charged."

28

1

**(15)**     <u>Statements Relevant to the Defense</u>

2

To reiterate, the United States will comply with all of its discovery obligations.  However,

3

"the prosecution does not have a constitutional duty to disclose every bit of information that might

4

affect the jury's decision; it need only disclose information favorable to the defense that meets the

5

appropriate standard of materiality."  <u>Gardner</u>, 611 F.2d at 774-775 (citation omitted).  Further,

6

Defendant is not entitled to the Grand Jury transcripts.

7

**(16)**     <u>Jencks Act Material</u>

8

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified

9

on direct examination, the Government must give the Defendant any "statement" (as defined by

10

the Jencks Act) in the Government's possession that was made by the witness relating to the

11

subject matter to which the witness testified. 18 U.S.C. § 3500(b).  A "statement" under the Jencks

12

Act is (1) a written statement made by the witness and signed or otherwise adopted or approved

13

by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's

14

oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  If notes

15

are read back to a witness to see whether or not the government agent correctly understood what

16

the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks

17

Act. <u>United States v. Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing <u>Goldberg v. United</u>

18

<u>States</u>, 425 U.S. 94, 98 (1976)).  While the Government is only required to produce all Jencks Act

19

material <u>after</u> the witness testifies, the Government plans to provide most (if not all) Jencks Act

20

material well in advance of trial to avoid any needless delays.

21

**(17)**     <u>Giglio Information</u>

22

As stated previously, the United States will comply with its obligations pursuant to <u>Brady</u>

23

<u>v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.

24

1991), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

25

**(18)**     <u>Agreements Between the Government and Witnesses</u>

26

The Government has not made or attempted to make any agreements with prospective

27

Government witnesses for any type of compensation for their cooperation or testimony.

28

1    **(19)    Informants and Cooperating Witnesses**

2        The Government must generally disclose the identity of informants where (1) the informant

3    is a material witness, or (2) the informant's testimony is crucial to the defense. <u>Roviaro v. United</u>

4    <u>States</u>, 353 U.S. 53, 59 (1957).  If there is a confidential informant involved in this case, the Court

5    may, in some circumstances, be required to conduct an in-chambers inspection to determine

6    whether disclosure of the informant's identity is required under <u>Roviaro</u>.   <u>See</u> <u>United States v.</u>

7    <u>Ramirez-Rangel</u>, 103 F.3d 1501, 1508 (9th Cir. 1997).  If the Government determines that there

8    is a confidential informant who is a material witness in this case, the Government will either

9    disclose the identity of the informant or submit the informant's identity to the Court for an in-

10   chambers inspection.

11   **(20)    Bias by Informants or Cooperating Witnesses**

12       As stated above, the United States is unaware of any evidence indicating that a prospective

13   witness is biased or prejudiced against Defendant.  The United States is also unaware of any

14   evidence that prospective witnesses have a motive to falsify or distort testimony.

15   **(21)    Law Enforcement Personnel Files**

16       The United States will continue to comply with its obligations pursuant to <u>United States</u>

17   <u>v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

18   **(22)    TECS Reports**

19       Defendant is not entitled to TECS reports unless the Government seeks to introduce the

20   TECS reports as 404(b) evidence.  Prior border crossings do not fall within the scope of 404(b)

21   unless offered for a purpose consistent with 404(b).  Defendant's interpretation of <u>Vega</u> is simply

22   wrong.  <u>Vega</u> merely holds that, to qualify under Rule 404(b), an act need not be intrinsically

23   "bad."  <u>United States v. Vega</u>, 188 F.3d 1150 (9th Cir. 1999).  <u>Vega</u> does not purport to overrule

24   all the prior Ninth Circuit (and other courts of appeals) authority that universally holds that, for

25   Rule 404(b) to apply, the "act" must relate to the defendant's character.  If in fact <u>Vega</u> purports

26   to overrule prior precedent, it is not good law and should not be followed.  The <u>Vega</u> panel did not

27

28

1    have the authority to overrule prior Ninth Circuit cases.  <u>See e.g.</u>, <u>Hart v. Massanari</u>, 266 F.3d

2    1155, 1171 (9th Cir. 2001).

3         (**23**)    <u>**Expert Summaries**</u>

4         The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written

5    summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705

6    of the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the

7    expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those

8    opinions.

9         (**24**)    <u>**Law Enforcement Training Records, Performance Goals and Policy Awards**</u>

10        Defendant makes a blanket request for all law enforcement training manuals, instructions

11   and information regarding policy goals and awards relating to the detection of contraband.

12   Defendant provides no authority for this request, nor does Defendant articulate any basis for the

13   discovery of this information.  The Government opposes this request.

14        (**25**)    <u>**A-File Review of Material Witness**</u>

15        Defendant is not entitled to view the A-File of the material witness.  The Government will

16   review the material witness's A-File and provide to Defendant any information they are entitled

17   to receive.

18        (**26**)    <u>**Residual Request**</u>

19        The Government has already complied with Defendant's request for prompt compliance

20   with its discovery obligations.  The Government will comply with all of its discovery obligations,

21   but objects to the broad and unspecified nature of Defendant's residual discovery request.

22        (**27**)    <u>**Grand Jury Transcripts**</u>

23        Defendant has not demonstrated a particularized need for the Grand Jury transcripts.  The

24   Government will provided Defendant with any prior statements of witnesses that it intends to call

25   at trial.

26   //

27   //

28

**(28).    Preservation of Evidence**

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules.  However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

Again, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**B.    THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED**

It bears noting that the Hon. John A. Houston and the Hon.  Barry Ted Moskowitz, both recently issued a detailed Order analyzing and rejecting all of the arguments Defendant raises here. See Order of Judge Moskowitz, attached as Appendix 3 and Order of Judge Houston attached as Appendix 4.  The United States adopts the reasoning in this Court's previous order and requests that the Court reach the same result.  Attached as Appendix 1 is the "Partial Transcript" of the Grand Jury Proceedings.  Attached as Appendix 2 is a redacted "Supplemental Transcript" which records the relevant portions of the voir dire proceedings.

This Court, and other courts of this district, have repeatedly rejected the arguments raised by Defendant before, and we ask the Court to do so again.

**C.    LEAVE TO FILE FURTHER MOTIONS**

The Government does not oppose this motion, as long as future motions are based upon evidence or information not now available.

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VI

## <u>CONCLUSION</u>

For the foregoing reasons, the United States requests that the Court deny Defendant's motions, except where unopposed.

DATED: March 18, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ A. Dale Blankenship
A. DALE BLANKENSHIP
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Dale.Blankenship@usdoj.gov

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 08CR0369-JLS |
| Plaintiff, | ) |
| | ) **CERTIFICATE OF SERVICE** |
| v. | ) |
| CHEONG SAU WONG(1), | ) |
| XU JUN LEE(2), | ) |
| Defendant. | ) |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO:**

> **1. COMPEL DISCOVERY;**
> **2. DISMISS INDICTMENT; AND**
> **3. FILE FURTHER MOTIONS.**

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

> **Leila Morgan, Esq., Federal Defenders of San Diego**
> Leila_Morgan@fd.org
> **Steven E. Feldman, Esq., Law Offices of Steven E. Feldman**,
> sfeldman77@san.rr.com

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

> **None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 18, 2008.

s/ A. Dale Blankenship
A. DALE BLANKENSHIP
